# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | James F. Holderman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 5228 | **DATE** | 10/12/2001 |
| **CASE TITLE** | SCHUSTER vs. LUCENT TECHNOLOGIES INC | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Pursuant to Memorandum Opinion and Order entered this day, defendant's motion for summary judgment is granted. This action is dismissed in its entirety. All pending motions are moot.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | Document Number |
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | OCT 12 2001 date docketed | |
| | Docketing to mail notices. | | | 36 |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| | | | 10/12/2001 date mailed notice | |
| JS | courtroom deputy's initials | 01 OCT 12 AM 11:27 | JS mailing deputy initials | |
| | | Date/time received in central Clerk's Office | | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

PAUL SCHUSTER )
)
Plaintiff, )
)
v. )
)
LUCENT TECHNOLOGIES INC., ) No. 00 C 5228
a Delaware Corporation, )
)
Defendant. )

**DOCKETED OCT 1 2 2001**

## MEMORANDUM OPINION AND ORDER

JAMES F. HOLDERMAN, District Judge:

Plaintiff Paul Schuster ("Schuster") filed a single count complaint under the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. §621 *et seq.* ("ADEA") against defendant Lucent Technologies, Inc. ("Lucent") seeking reinstatement from termination, damages, attorneys' fees and costs. On July 31, 2001, Lucent filed this motion for summary judgment pursuant to Federal Rule of Civil Procedure 56. Having considered the matter fully, for the reasons stated herein, Lucent's motion for summary judgment is GRANTED.

## STATEMENT OF FACTS[1]

Schuster, born August 11, 1943, began working for Lucent's corporate predecessor, AT&T Bell Labs, in 1967. In 1997, Schuster, Jim Weichel ("Weichel"), born February 2, 1948, and Dan

---

[1] The following facts are undisputed and are taken from the defendant's and plaintiff's Local Rule 56.1(a) & (b) statements of material facts and accompanying exhibits.

1

Fyock ("Fyock"), born December 19, 1948, helped to form Visual Insights, a venture within Lucent. In December 1997, Lucent hired Douglas Cogswell ("Cogswell"), born October 15, 1955, to be Visual Insights' Chief Executive Officer ("CEO"). Cogswell's objective was to create Visual Insights into a viable business using Lucent's data visualization technology and to ultimately break Visual Insights away ("spin-off") from Lucent into its own entity. Cogswell sought to cultivate a team and culture that was fast-moving, more amendable to a very rapidly changing marketplace, and quicker in decision-making, as compared to Lucent's culture.

The data visualization software at the core of Visual Insights' business was essentially the creation of Steve Eick ("Eick"), born December 31, 1957. Schuster became Vice President of Product Development for the Visual Insights and in this capacity Schuster was responsible for managing the process of developing software. Schuster reported to Weichel. Weichel became Chief Operations Officer, and reported to Cogswell. Michael Tatelman ("Tatelman"), born November 12, 1956, was Vice President of Marketing and Business Development reported to Cogswell, and Patricia O'Donnell ("O'Donnell"), born July 3, 1956, was Vice President of Sales and Services and also reported direct to Cogswell. By 1998, two additional management-level positions were created reporting to Schuster. These positions were given the title Project Manager and Director of Software Development and were filled by Susan Burkwald ("Burkwald"), born September 26, 1961, and Martin Biernat ("Biernat"), born December 2, 1958.

In the fall of 1998, Lucent directed Cogswell and senior management of Visual Insights to obtain outside funding. By April 1999, Visual Insights had failed to secure outside funding, and Visual Insights had an unacceptably high expense rate as well as below-target revenues. Accordingly, in an effort to reduce the expensive rate, increase efficiency and attract outside

investors, Cogswell set out to reduce the overall size of Visual Insights by approximately twenty employees. Cogswell stated that Visual Insights needed to eliminate positions which were not absolutely critical and needed to look for programs and staff groups where there was ineffective layering. In May 1999, Visual Insights implemented a reduction-in-force ("RIF") impacting about fifteen employees. In the summer of 1999, while still not meeting its performance goals, Visual Insights underwent another RIF which impacted five additional positions, including Schuster's position.

Within this second RIF, Cogswell prepared a document which set forth a proposal for restructuring the research and development area of Visual Insights. In implementing this proposal, Cogswell solicited input from for the other members of Visual Insight's senior leadership, Weichel, O'Donnell and Tatelman. This proposal called for: (1) the elimination of one executive position, Schuster's; (2) the elimination of the project management function held by Schuster, Biernat, and Burkwald; (3) the elimination of one developer, Sharon Adler, born September 3, 1939; and (4) the elimination of one service manager, Fyock. Cogswell believed that the three manager positions held by Schuster, Biernat and Burkwald could be eliminated and consolidated into one, lower-level position. Additionally, Cogswell compared Schuster's function as one who managed software development to Eick's function who invented, created, and developed the software. Cogswell determined that Eick was more of an integral part of the success of the Visual Insights and its eventual spin-off. Cogswell and senior leadership believed that Visual Insights could successfully spin-off without Schuster but not without Eick. Cogswell and the senior leadership also felt that although Schuster was a very valuable member of the team, financial pressures and performance issues were tantamount.

Schuster was notified that he had been chosen to be terminated as part of a RIF on September 20, 1999 and that he would be terminated on October 19, 1999, if he could not find another Lucent position by that date. Schuster did not secure another position within Lucent and was terminated on October 19, 1999.

In November 1999, Visual Insights finally obtained outside funding and was able to spin off from Lucent to form a new company, Visual Insights, Inc. Cogswell became the CEO and President of Visual Insights, Inc., Weichel the Chief Operating Officer, Eick the Chief Technical Officer and Vice President of Research and Development, Tatelman the Vice President of Marketing and Business, and O'Donnell the Senior Vice President of Sales. Schuster's former resposibilities were absorbed by Eick, and a new lower level management position Executive Director of Product Development which was filled by Bill Hammond ("Hammond"), born June 15, 1959, a member of O'Donnell's group. Schuster filed this suit on August 24, 2000.

## STANDARD OF REVIEW

Under Rule 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In ruling on a motion for summary judgment, the evidence of the nonmovant must be believed and all justifiable inferences must be drawn in the nonmovant's favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S. Ct. 2505, 2513 (1996). This court's function is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial.

A party who bears the burden of proof on a particular issue, however, may not rest on its

pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial. Celotex Corp. v. Catrett, 477 U.S. 317, 324, 106 S. Ct. 2548, 2553 (1986). There is no issue for trial "unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." Anderson, 477 U.S. at 249, 106 S. Ct. at 2511.

## ANALYSIS

Schuster alleges that Lucent, within the context of a reduction-in-force ("RIF"), discriminated against him due to his age. Schuster was fifty-six years old at the time of his termination, but has not offered any direct evidence of discrimination by Lucent. Schuster, therefore, must proceed under the familiar indirect method of proof outlined in McDonnell Douglas. See McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802, 93 S.Ct. 1817 (1973). In general, the analysis of RIF cases is no different from the analysis appropriate for other forms of discrimination. Adams v. Ameritech Services, Inc., 231 F.3d 414, 422 (7th Cir. 2000)(citations omitted). Id. A RIF is a situation in which an employer decides whom, from a defined group of existing employees, it will retain and whom it will terminate. Within an RIF, therefore, it is the plaintiff's burden to show that the employer, in making its decisions, decided in a discriminatory way whom it would retain and whom it would terminate. Id. Accordingly, to establish a prima facie case of discrimination under the ADEA, Schuster must first establish that he was in the protected age group, and performing to Lucent's legitimate expectations. Then Schuster must show that he suffered an adverse employment action and that substantially younger employees who were similarly situated to him were treated more favorably by Lucent. See Janiuk v. TCG/Trump Co., 157 F.3d 504, 507 (7th Cir. 1999)(applying McDonnell method in an ADEA-RIF case). Once Schuster satisfies this

5

initial burden, Lucent must come forward with a legitimate, nondiscriminatory reason for Schuster's discharge. Id. Once Lucent satisfies its burden then Schuster bears the ultimate burden of showing that Lucent's proffered reason is a pretext for age discrimination. Id.

In this case, Lucent, for purposes of this motion for summary judgment, has assumed that Schuster can establish a prima facie case of discrimination and argues that Schuster cannot produce sufficient evidence in the record to raise a genuine issue of material fact that Lucent's proffered reasons for Schuster's discharge are a pretext for age discrimination. Upon a complete review of the record, there is insufficient evidence to raise a genuine issue of material fact that Lucent's proffered reasons for Schuster's discharge are a pretext for discrimination. As a result, this court must grant summary judgment in favor of Lucent as a matter of law.

Lucent states that Schuster was terminated on October 19, 1999 pursuant to a RIF and explains that it undertook its RIF due to adverse financial conditions within Visual Insights, due to the need to eliminate management overlap, due to the need to lower costs, and due to the need to decrease the size of visual Insights. Lucent articulates that the RIF and Schuster's subsequent dismissal was based on Visual Insights not having found external funding in the fall of 1999, and Visual Insights' need to attract outside investors and eventually spin-off from Lucent.

In light of Lucent's proffered nondiscriminatory reason, Schuster has the burden of showing that Lucent's proffered reason is a pretext for age discrimination. To show pretext, a plaintiff is required to establish that the employer did not honestly believe the reasons it gave for terminating him and that age tipped the balance in favor of discharge. See Adreani v. First Colonial Bankshares Corp., 154 F.3d 389, 395 (7th Cir. 1998). Schuster can prove pretext in one of two ways: (1) by showing that a discriminatory reason more likely than not motivated the employer; or (2) by showing

6

that the employer's proffered explanation is unworthy of credence. Id. In attempting to establish pretext, an employee discharged in a RIF does not need to produce evidence tending to prove that the employer's explanation was a "lie" in the sense of being a complete fabrication; instead, he must establish that age tipped the balance in favor of discharge. Adreani, 154 F.3d at 395. Schuster argues that Lucent's proffered reasons are a pretext because of: (A) derogatory, age-biased comments made by decision-makers, Cogswell and Tatelman; (B) lies told by Lucent concerning the identity of the decision-makers, concerning criteria used in Schuster's termination, and concerning substantially younger employees assuming Schuster's position; (C) strong statistical evidence of age discrimination, rejecting any idea of random employee selection. None of these arguments are supported by evidence in the record such that they would raise an issue of material fact that Lucent's proffered reasons are a pretext for discrimination.

A. Lucent's Proffered Reasons have not been shown to be Pretextual based on Derogatory Comments

It is undisputed in this case that Cogswell's self-proclaimed mission as CEO of Visual Insights was to change its culture by creating "a team that was faster-moving, [and] was more amendable to a very rapidly changing marketplace." In addition, it is undisputed that Cogswell asked Schuster, shortly after Schuster was hired, two years before Schuster was terminated, how long Schuster intended to continue working and whether Schuster had plans to retire. As for Tatelman, it is undisputed that Tatelman stated at a development team meeting, months after Schuster was terminated, that one "must think like a twenty-five year old," and then added, "well seriously, all the guys at Microsoft are twenty-five." Schuster argues that these comments were perceived by him and various other employees as "code language" for the eventual elimination of older workers whom

7

Cogswell, Tatelman viewed as incapable of changing. Based on these comments, Schuster states he and others observed the "systematic removal of older people in the organization by forced termination" as well as a "systematic change in the culture from ethnic, age and gender diversity to a focus on [hiring] young white males." Reviewing these "derogatory" comments, the undisputed facts establish that Cogswell's and Tatelman's comments lack the requisite temporal proximity to Schsuter's termination and lack the requisite age animus to raise an issue of material fact that Lucent's proffered reasons are a pretext to discrimination.

First, these comments are not direct evidence of discrimination. Direct evidence is defined as evidence which if believed by the trier of fact, will prove the particular fact in question without reliance upon inference or presumption. Plair v. E.J. Brach & Sons, Inc., 105 F.3d 343, 347 (7th Cir. 1997). Based on the above comments, a trier of fact would need to infer Cogswell's and Tatelman's intent in making those comments and would need to infer how Cogswell and Tatelman ultimately implemented their comments. Second, there is no evidence in the record, direct or otherwise, which links these comments with Schuster's termination. Statements of a derogatory character are evidence of discrimination only if they are made around the time of and in reference to the alleged adverse employment action. See Gorence v. Eagle Food Centers, Inc., 242 F.3d 759, 762 (7th Cir. 2001)(citations omitted). These "derogatory" comments cited by Schuster are appropriately labeled "stray" comments, comments which fail to show discrimination because they are unrelated to the employment decision at issue in this case. Id. Even though it is undisputed that Cogswell made the decision to terminate Schuster with input from Tatelman, it is also undisputed that the comments in question were not made at the time of Schuster's termination in October 1999. Ultimately, Schuster's perceptions and subsequent observations concerning these "deragatory" comments are

8

unsubstantiated in the record.

B.  Lucent's Proffered Reasons have not been shown to be Pretextual based on Lies

Schuster argues that to create a culture of like minded younger workers, Cogswell and Tatelman decided that Schuster and other employees over fifty would be fired. Schuster states that initially Lucent attempted to justify Schuster's termination by stating to the EEOC that Weichel, Cogswell, and O'Donnell made the decision to fire Schuster and not Tatelman. Furthermore, Schuster argues that Lucent's comparison of Schuster and Eick, who was not terminated and age forty-one at the time of Schuster's termination, is contrived and "tantamount to comparing 'apples to oranges.'" Schuster states that he and Eick did not have similar jobs, job titles or even perform similar functions. Next, Schuster argues that Lucent lied when it claimed that Schuster's job duties were eliminated and when it claimed that younger workers were not treated more favorably. Schuster states that the record reveals that Schuster's responsibilities were spread to several significantly younger workers including, Hammond, Tatelman, and Eick. Finally, Schuster argues that Lucent's termination of four other positions along with Schuster's is suspicious because two of the youngest employees within this group to be eliminated Biernat, age forty, and Burkwald, age thirty-eight, had already resigned prior to the RIF. This court will address each argument in turn.

First, Schuster has failed to adduce evidence in the record to raise a genuine issue of material fact that Weichel, Cogswell, O'Donnell or Tatelman had any age animus. Schuster insists that Tatelman was a decision-maker because Schuster argues that Tatelman's and Cogwell's comments, described in earlier in this opinion, carry age animus and were connected to Schuster's subsequent termination. Both of Cogswell's and Tatelman's comments, however, only establish the type of thinking that each person wanted Visual Insights to reflect. Neither comment suggests that either

person wanted his subordinates to be a certain age, nor does either comment suggest that if an employee who thought in an appropriate manner would nonetheless summarily dismissed because of that employee's age. Based on the record in this case, there is no evidence raising an issue of material fact that any direct or indirect decision-makers held any age animus, or raising an issue that Schuster actually thought and worked consistently with Visual Insights new direction, but was nonetheless fired because of his age.

Second, as to Schuster's argument of comparing "apples to oranges," this argument fails because this argument addresses solely whether Lucent's comparison of Schuster and Eick is correct and does not address whether Lucent believed in the comparison or actually relied on the comparison is choosing to terminate Schuster and retain Eick. Pretext is more than a mistake or a misinformed comparison on the part of the employer; pretext means a lie, specifically a phony reason for some action. See Richter v. Hook-SupeRx, Inc., 142 F.3d 1024, 1029-30 (7th Cir.1998)(citations omitted). Thus, "[t]he issue of pretext does not address the correctness or desirability of [the] reasons offered for employment decisions. Rather, it addresses the issue of whether the employer honestly believes in the reasons it offers." Id. at 1029. In support of this argument, Schuster offers nothing more than his conclusion about the correctness of Lucent's business decision to terminate his employment, which does not create an issue of material fact.

Third, Schuster's argument about his former responsibilities being re-assigned does not establish an issue of material fact that Lucent's proffered reasons are pretextual. The fact that Schuster's position was re-assigned to an employee retained by Lucent and that no new employees were hired by Visual Insights until after investment funds had been secured bolsters Lucent's claim that Schuster's position was eliminated within an RIF.

10

Finally, the fact that Biernat and Burkwald had already resigned prior to their terminations is immaterial as to whether Lucent's proffered explanation is a pretext for discrimination, since it is undisputed that Biernat's and Burkwald's positions were eliminated as a part of a RIF and since it is also undisputed that no one was brought into Visual Insight after the RIF to replace Biernat, Burkwald, Schuster, or the other two displaced employees.

### C. Lucent's Proffered Reasons have not been shown to be Pretextual Based on Statistical Evidence

In a discrimination case proceeding under a disparate impact theory, statistical evidence is obviously of central importance, but, disparate impact is not a theory available to age discrimination plaintiffs in the United States Court of Appeals for the Seventh Circuit. Adams, 231 F.3d at 422. Statistical evidence can be useful, however, in a case such as this alleging disparate treatment or discriminatory pattern but such evidence will likely be sufficient by itself. See id., at 423. In other words, it is unlikely that a pure correlation, say between age and terminations, would be enough to establish a prima facie case of intentional discrimination. Kadas v. MCI Systemhouse Corp., 255 F.3d 359, 363 (7th Cir. 2001). The Seventh Circuit explains:

> If 100 employees in a department of 1,000 employees were riffed [terminated] and every one of the 100 was 40 years old or older and every one of the 900 retained was under 40, that would, we should think, be enough evidence of age discrimination (the probability of its occurring by chance being inconceivably minute) to place on the employer a burden of explaining, which is all that making out a prima facie case means.

Id.

In this case, Schuster argues that based on the population of Visual Insights the probability that three of the five employees terminated in the second RIF would be over fifty years of age is 1.28%, which defeats any argument that Schuster was chosen at random and therefore supports a

strong inference of age discrimination. This statistical evidence is completely immaterial to any issue in this case because the question here is not whether Schuster was selected at random for inclusion in the RIF, but rather whether Lucent's reasons for Schuster's inclusion in the RIF are forbidden or untrue. The statistical evidence presented by Schuster proves absolutely nothing and does not raise a genuine issue of material fact that Lucent's proffered reasons are a pretext for discrimination. The court reserves judgment on whether Schuster's statistical evidence even meets the mandates of Federal Rule of Civil Procedure 26(a)(2) or meets the mandates of <u>Daubert v. Merrell Dow Pharmaceuticals, Inc.</u>, 509 U.S. 579, 113 S.Ct. 2786 (1993) and its progeny.

In summary, in light of the nondiscriminatory reasons offered by Lucent as to why Schuster was terminated, Schuster has failed to produced sufficient evidence in the record to establish an issue of fact that these reasons are a pretext for discrimination.

## CONCLUSION

For the above stated reasons, Lucent's motion for summary judgment is GRANTED. This case is dismissed with prejudice in its entirety. All pending motions are moot.

ENTER:

*James F. Holderman*
JAMES F. HOLDERMAN
United States District Judge

DATE: October 12, 2001